UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| **MARY RINGOLD** § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | Case No. 2:12-cv-02344-JPM-dkv |
| § | |
| **BANK OF AMERICA HOME LOANS;** § | |
| **BANK OF AMERICA LOANS SERVICING, LP** § | |
| **NATIONWIDE TRUSTEE SERVICES, INC.** § | |
| § | |
| *Defendant*. § | |

### PLAINTIFF'S SECOND AMENDED VERIFIED COMPLAINT

**COMES NOW**, Mary Ringold, and submits her Amended First-Verified Complaint regarding the wrongful foreclosure of her home located in Cordova, Shelby County, Tennessee and states as follows:

### PARTIES

1. Mary Ringold ("Plaintiff") resides in Shelby County, Tennessee; Plaintiff purchased property located at 9245 Acadia Place Cordova, Tennessee 38018 in 2006.

2. Bank of America, N.A. ("Defendant BANA"), Successor by merger to Bank of America Home Loans Servicing, conducts business in Tennessee and can be served with process through its registered agent, CT Corporation, located at 350 North St. Paul Street #2900, Dallas, Texas 75201.

3. Nationwide Trustee Services ("Defendant Trustee") conducts business at 1587 Northeast Street Expressway, Atlanta, GA 30329 and can be served with process through its registered agent National Registered Agents, Inc. at 2300 Hillsboro Road Ste. 305, Nashville, TN 37212.

## JURISDICTION AND VENUE

4. The property involved in this lawsuit is located in Cordova, Shelby County, Tennessee at 9245 Acadia Place and, upon information and belief, has been recorded with the Shelby County Register of Deeds by Defendant BANA.

5. All contracts, notes, deeds, and transactional documents involved were negotiated and signed in Shelby County, Tennessee.

6. Defendant BANA and Defendant Trustee have their principal place of business in a jurisdiction other than Tennessee, therefore jurisdiction and venue is proper with this Court pursuant to USC § 1332 Diversity of Citizenship.

## FACTUAL ALLEGATIONS

7. On November 27, 2006, approximately six (6) ago, Plaintiff purchased a home located at 9245 Arcadia Place Cordova, Tennessee 38018.

8. Plaintiff originally financed her home through Eagle Mortgage and Funding Corporation, a former Tennessee Corporation with its principal place of business at 6260 Poplar Avenue, Memphis, Tennessee 38119.

9. At closing, Plaintiff was granted an escrow waiver and was not required to make payments into to escrow in addition to her monthly mortgage payments.

10. As condition for the escrow waiver, Plaintiff accepted responsibility for paying her own property taxes, and homeowners insurance directly.

11. Plaintiff's purchase of the property located at 9245 Acadia was also supported by a deed of trust executed by Plaintiff and Eagle Mortgage and Funding Corporation on November 27, 2006. (See Exhibit 1).

12. Eagle Mortgage and Funding Corporation, a Tennessee Corporation, was administratively dissolved in Tennessee on August 22, 2008, but continued to conduct

business thereafter.

13. On December 9, 2008, Eagle Mortgage and Funding Corporation executed a Corporation Assignment of Deed of Trust to Countrywide Bank N.A., 1800 Tapo Canyon Road, Simi Valley, California 93063. Countrywide Bank, N.A. later merged with Bank of America, N.A. (See Exhibit 1).

14. Plaintiff's original mortgage loan was $150,192.00, which was to be paid in regular periodic payments, with the balance paid in full, no later than December 1, 2036. (See Exhibit 1).

15. Plaintiff's loan and/or mortgage product was classified as a Fixed/Adjustable Rate Mortgage, commonly known as an ARM (Adjustable Rate Mortgage). (See Exhibit 1).

16. Under the term of her security agreement, Plaintiff would maintain an initial fixed interest rate of 5.375% for a period of five (5) years. (See Exhibit 1).

17. Upon conclusion of the five (5) year initial fixed interest rate, Plaintiff's loan was set to transition to an adjustable interest rate, subject to monthly changes. (See Exhibit 1).

18. Plaintiff was fully aware her fixed interest rate would transition into an adjustable rate mortgage beginning December 1, 2011.

19. As such, Plaintiff began pursuing a loan modification through the Neighborhood Assistance Corporation of America ("NACA") in early 2009.

20. NACA sent Defendant BANA correspondence to begin the loan modification process for Plaintiff, but Defendant BANA never responded to NACA's inquiry.

21. NACA also requested documents from Defendant BANA regarding a modification of Plaintiff's mortgage, but Denfendant BANA did not respond to NACA's request.

22. Consistent with its guidelines, NACA requested an escrow account be created for

3

...

Plaintiff, but never received any response or confirmation of escrow opening for her.

23. Plaintiff's pursuit of a loan modification continued for over a two year period, during which Defendant BANA never confirmed that escrow was opened with NACA and never provided written notice to Plaintiff of any requirement to pay into escrow and the amount. .

24. Plaintiff inquired about various federal programs but was told that she was not eligible.

25. However, Plaintiff was later penalized for failure to pay the appropriate fees into an escrow account opened by Defendant BANA. Plainfitiff never received any written notice that she was to pay into escrow and the requisite payment.

26. As such, Plaintiff continued to pay her property taxes pursuant to her waiver under the deed of trust.

27. Plaintiff paid the property taxes for 2007 which became payable in 2008. Plaintiff paid $1,478.54 on February 27, 2008 in full satisfaction of her 2007 property taxes. (See Exhibit 2).

28. Plaintiff paid the property taxes for 2008 which became payable in 2009. Plaintiff paid $1,478.54 on February 17, 2009 in full satisfaction of her 2008 property taxes. (See Exhibit 3).

29. Plaintiff paid the property taxes for 2009 which became payable in 2010. Plaintiff paid $1,389.54 on February 15, 2010 in full satisfaction of her 2009 property taxes. (See Exhibit 4).

30. Plaintiff remitted payment for her 2010 property taxes which became payable in 2011. Plaintiff remitted $1,389.54 on February 24, 2011 in full satisfaction of her 2010 property taxes. However, her payment was returned with a letter stating that Plaintiff's 2010

property taxes had already been satisfied. (See Exhibit 5).

31. Plaintiff also continuously maintained homeowner's insurance on the property through Metropolitan Property and Casualty Insurance Company (MetLife Home & Auto). (See Exhibit 6).

32. In addition, Plaintiff made all mortgage payments in full from November 27, 2006 until Defendant BANA foreclosed on the property in 2011.

33. On November 16, 2010, Plaintiff received a notice of intent to accelerate her loan and foreclose on her property. However, Plaintiff was not behind on a single mortgage payment, Plaintiff was not behind any property taxes, and Plaintiff maintained proper homewner's insurance. (See Exhibit 7).

34. On March 8, 2011, Plaintiff received a notice of right to Foreclosure from Defendant Trustee depiste not being behind on her mortgage and despite the fact Defendant BANA accepted her March 2, 2011 mortgage payment. (See Exhibit 7).

35. Furthermore, Plaintiff fulfilled her responsibilities to pay her mortgage and meet her escrow waiver obligations.

36. Plaintiff was foreclosed without being behind on her mortgage, and/or property taxes.

37. Plaintiff was not treated fairly, and was arbitrarily and capriciously subjected to foreclosure.

38. Defendant BANA continued accepting mortgage payments from Plaintiff throughout the foreclosure process and Defendant Trustee knew or had reason to know Defendant BANA was still accepting mortgage payment from Plaintiff.

## COUNTS

### COUNT I –   WRONGFUL FORECLOSURE

39. Plaintiff incorporates, by reference, the preceding allegations of this Complaint as if fully set forth herein.

40. Plaintiff asserts a claim for wrongful foreclosure and states as follows:

    a. Plaintiff never missed paying a single mortgage payment on her home until she was cast into foreclosure and her loan was wrongly accelerated.

    b. Plaintiff never received written notice of (1) whether she was to pay into an escrow account, (2) when she was to begin paying into escrow, and (3) how much she was expected to pay into escrow.

    c. Plaintiff maintained appropriate homeowner's insurance on the property without allowing any lapse in insurance coverage.

    d. Plaintiff paid the property taxes on her property every year, on time, and as a result should have never accrued the late fees and/or escrow deficiencies that were charged against her.

    e. Defendant BANA continued to accept payments from Plaintiff leading up to her foreclosure.

    f. Defendant BANA knew or had reason to know Plaintiff was not behind on her mortgage or property taxes.

    g. Defendant Trustee knew or had reason to know Defendant BANA was still accepting mortgage payments from Plaintiff and that she was current on her mortgage payments and her property tax obligations when she received intent to foreclose notices in November 2010.

6

    h. As a result of acts committed by Defendant BANA and Defendant Trustee, Plaintiff was wrongfully foreclosed upon, and thereafter evicted from her home. Plaintiff's property was destroyed; she had to seek alternative living arrangements, her credit were destroyed and her home taken from beneath her.

41. As a result of acts committed by Defendant BANA and Defendant Trustee, Plaintiff has suffered damages in the amount of $500,000.00

## COUNT II – BREACH OF CONTRACT BY DEFENDANT BANA

42. Plaintiff incorporates, by reference, the preceding allegations of this Complaint as if fully set forth herein.

43. Bank of America, N.A. pursuant to its merger with Countrywide Bank, N.A, acquired Plaintiff's mortgage.

44. The Deed of Trust associated with Plaintiff's property creates contractual privity between Defendant BANA and Plaintiff. As a result, the Deed of Trust remains a binding contract between both parties.

45. Defendant has an obligation to fulfill the terms of the Deed of Trust lest it be held liable for breach of contract.

46. In this matter, Defendant BANA breached its contractual obligation to Plaintiff as stated hereafter:

    a. Defendant BANA failed to provide proper written notice to Plaintiff regarding her need to make payments into escrow as specifically required in the Deed of Trust.

    b. Plaintiff had no idea she was to pay into escrow, as such, she continued to pay her own property taxes, and homeowner's insurance directly.

    c. Nevertheless, Defendant BANA charged escrow deficiencies and late fees against

      Plaintiff when there was no actual need for payments to be made into escrow.

    d. Plaintiff was denied an opportunity to reinstate her loan after acceleration pursuant to paragraph 19 of uniform covenants in the Deed of Trust.

47. Defendant BANA breached the terms of the Deed of Trust by establishing an escrow account for Plaintiff even though Plaintiff was not delinquent in her payments and penalizing her for it.

48. Defendant BANA's conduct is the proximate cause of Plaintiff's injuries.

49. As a result of acts committed by Defendant BANA and Defendant Trustee, Plaintiff has suffered damages in the form of foreclosure and financial devastation and seeks damages in the amount of $500.000.00.

## COUNT III -INDUCING A BREACH OF CONTRACT IN VIOLATION OF TENNESSEE CODE § 47-5-109 BY DEFENDANT BANA

50. Plaintiff incorporates, by reference, the preceding allegations of this Complaint as if fully set forth herein.

51. Defendant BANA'S actions as aforesaid constitute inducing a breach of contract within the meaning of: Tenn. Code § 47-50-109.

> It is unlawful for any person, by inducement, persuasion, misrepresentation, or other means, to induce or procure the breach or violation, refusal or failure to perform any lawful contract by any party thereto; and, in every case where a breach or violation of such contract is so procured, the person so procuring or inducing the same shall be liable in treble the amount of damages resulting from or incident to the breach of the contract. The party injured by such a breach may bring suit for the breach and for such damages.

52. Defendant BANA and Plaintiff had a legal mortgage contract, and by evidence to be provided during trial, Plaintiff will show that Defendant BANA improperly opened and maliciously applied escrow fees against Plaintiff in a manner which amounts to a

contractual breach of the terms of the Deed of Trust.

53. Defendant BANA knew or had reason to know Plaintiff was directly paying her own escrow expenses when it intentionally charged her deficiency balances which resulted in the acceleration of Plaintiff's loan and ultimately, her foreclosure.

54. Defendant BANA knowingly delayed its response to Plaintiff's request for a loan modification and led her to believe she was in a good position to keep her home.

55. Defendant BANA is liable to Plaintiff, and Plaintiff is entitled to recover treble damages in the amount of $500,000.00 for losses sustained as a result of Defendant BANA 's conduct.

56. Defendants breached their duty to refrain from any action, which would render performance of the contract impossible when it penalized Plaintiff with foreclosure for not paying into an escrow account for which she received no written notice as required under the Deed of Trust, a binding contractual agreement.

57. Defendant BANA breached its duty to perform all essential elements of the contract that were presupposed by the contract in order to accomplish the purpose of the contract.

58. Defendant BANA's conduct is the proximate cause of the damages to Plaintiff, and therefore, Defendants are liable to Plaintiff for damages resulting from its conduct in an amount not less than $500,000.00.

## COUNT IV – SETTING ASIDE TRUSTEE SALE.

59. Plaintiff incorporates, by reference, the preceding allegations of this Complaint as if fully set forth herein.

60. Plaintiff was not behind on her mortgage, property taxes, or homeowner's insurance.

61. Defendant Trustee knew or had reason to know, upon review of the documentation

provided to him, that Plaintiff should not have been allowed to make payments and go through a foreclosure.

62. Defendant Trustee knew or had reason to know that Defendant BANA was still accepting payments from Plaintiff while her loan was being accelerated and set for foreclosure.

63. Defendant Trustee's management of Plaintiff's foreclosure was done with irregularity, and unfairness on the part of the trustee and the mortgagee.

64. Plaintiff is therefore entitled to an order setting aside the foreclosure sale of Plaintiff's property and and an order rescinding her mortgage obligation.

**WHEREFORE,** Plaintiff prays that defendants be cited to appear and answer in this action and that upon the evidence, finding of the jury and applicable law, the court rules as follows:

1. That the Defendants are liable for their misconduct as expressed in each count of the Complaint and that an award of punitive damages in the amount of $250,00.00 is awarded to the Plaintiff;

2. That the Court orders for the sale of Paintiff's home be set aside and her mortgage obligation be rescinded;

3. That the Court grant other damages in an amount not less than $500,000.00;

4. That the Court award reasonable attorneys fees, costs, and expenses of this action to Plaintiff's counsel, and provide for interim payment in the case of an appeal of the judgment by the Defendant; and

5. That the court grant such other relief as may be appropriate as the circumstances of this cause dictate including attorney fees and treble damages as provided under

the Tennessee Consumer Protection Act.

6. That the Court order such other relief as the Court deems appropriate under the circumstances.

    Respectfully submitted,

    HEWLETT LAW FIRM, PLLC

    /s/Michael L. Harris
    _____
    MICHAEL L. HARRIS (BPR#30634)
    200 JEFFERSON AVENUE, SUITE 713
    MEMPHIS, TN 38103
    (O) 901-590-3250
    (F) 901-590-3253
    *Counsel For Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of December 2012, a true and correct copy of the foregoing Initial Disclosures were served using the CM/ECF system and/or through first-class U.S. Mail, postage prepaid, upon the following Attorney of Record:

    Paul Allen England
    STITES & HARBISON, PLLC
    401 Commerce Street STE. 800
    Nashville, TN 37219
    *Attorney for Defendant Bank of America*

    Elizabeth B. Padgett
    JOHNSON & FREEDMAN, LLC
    1587 Northeast Expressway
    Atlanta, GA 30329
    *Attorney for Defendant Nationwide Trustee Services, Inc.*

    /s/Michael L. Harris
    _____
    MICHAEL L. HARRIS