IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

| | |
|---|---|
| MARY RINGOLD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.  ) | 2:12-cv-02344-JPM-dkv |
| ) | |
| BANK OF AMERICA HOME LOANS; ) | |
| BANK OF AMERICA LOANS ) | |
| SERVICING, LP; NATIONWIDE ) | |
| TRUSTEE SERVICES, INC., ) | |
| ) | |
| Defendants. ) | |

---

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS**

---

Before the Court is Defendant Bank of America, N.A.'s Motion to Dismiss Plaintiff's Second Amended Verified Complaint, filed December 19, 2012. (ECF No. 24.) Plaintiff responded on February 13, 2013. (ECF No. 26.)[1]

For the following reasons, Defendant's Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

### I. BACKGROUND

This action arises out of Defendants' foreclosure of Plaintiff's property. (See Second Am. Compl., ECF No. 22, at 1.)

---

[1] The Response filed by Plaintiff on February 13, 2013, was to the Court's Order for Plaintiff to Show Cause (ECF No. 25), entered January 28, 2013. Plaintiff's Response to the Order contains assertions opposing Defendant's Motion to Dismiss. The Court construes Plaintiff's Response to the Order to Show Cause as a Response to Defendant's Motion to Dismiss.

**A. Factual Background**

On November 27, 2006, Plaintiff Mary Ringold ("Plaintiff" or "Ringold") purchased a home located at 9245 Acadia Place, Cordova, Tennessee 38108 (the "Acadia Property"). (Id. ¶ 7.)[2] Plaintiff originally financed her home through Eagle Mortgage and Funding Corporation ("EMF Corp.") with a Fixed/Adjustable Rate mortgage loan of $150,192.00 and a five-year initial fixed interest rate of 5.375%, supported by a Deed of Trust. (Id. ¶¶ 8, 11, 14-16.) Plaintiff was granted an escrow waiver at closing and, as a condition for the waiver, accepted responsibility for paying her own property taxes and homeowners insurance directly. (Id. ¶¶ 9-10.)

Section 3 of the Deed of Trust instrument states that the "Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all funds, and in such amounts, that are then required under this Section . . . ." (Deed of Trust, ECF No. 22-1, at 4.) Section 15 of the Deed of Trust states that "[a]ll notices given by Borrower or Lender in connection with this Security Instrument must be in writing." (Id. at 10.)

EMF Corp. assigned Plaintiff's Deed of Trust to Countrywide Bank, N.A. ("Countrywide"), on December 9, 2008. (ECF No. 22

---

[2] In its Motion to Dismiss, Defendant Bank of America, N.A., states that "[t]he facts as alleged in [Plaintiff's] Second Amended Complaint are taken as true for the purposes of [Defendant's Motion to Dismiss] only." (ECF No. 24-1 at 3 n.2.)

2

¶ 13.)  Countrywide later merged with Defendant Bank of America, N.A. ("Defendant" or "Bank of America").[3]  (Id.)

Beginning December 1, 2011, Plaintiff's loan was set to transition to an adjustable interest rate, subject to monthly changes.  (Id. ¶¶ 17-18.)  In early 2009, Plaintiff began pursuing a loan modification with Defendant through the Neighborhood Assistance Corporation of America ("NACA").  (Id. ¶ 19.)  NACA sent Defendant an inquiry to begin the loan modification process for Plaintiff, requested documents from Defendant regarding a modification of Plaintiff's mortgage, and requested that Defendant create an escrow account for Plaintiff consistent with NACA's guidelines.  (Id. ¶¶ 20-22.)  Defendant did not respond to NACA's inquiries, and Plaintiff did not receive any written notice that she was to pay into escrow.  (Id. ¶ 23.)  Defendant states that, "pursuant to NACA guidelines, [it] established an escrow account on Plaintiff's mortgage loan and charged Plaintiff for advances and payments made out of that account."  (ECF No. 24-1 at 4; see also ECF No. 22 ¶ 25.)

Pursuant to the escrow waiver under the Deed of Trust, Plaintiff paid the property taxes on the Acadia Property from 2007 through 2010, and maintained homeowners insurance on the

---

[3] Plaintiff names "Bank of America Home Loans" and "Bank of America Home Loans Servicing, LP," as Defendants.  Defendant Bank of America states that these two entities are actually a single entity, formerly known as BAC Home Loans Servicing, LP, which "merged with and into Bank of America, N.A.," on July 1, 2011.  (ECF No. 24 at 1 n. 1.)  Bank of America, N.A., therefore, "responds as successor by merger to BAC Home Loans Servicing, LP."  (Id.)

3

Acadia Property. (ECF No. 22 ¶¶ 26-31.) Plaintiff's payment for her 2010 property taxes, made February 24, 2011, was returned with a letter stating that Plaintiff's 2010 property taxes had already been paid. (Id. ¶ 30.)

On November 16, 2010, Plaintiff received a Notice of Intent to Accelerate her loan and foreclose on the Acadia Property. (Id. ¶ 33; see ECF No. 1-4 at PageID 423.) On March 8, 2011, Plaintiff received a Notice of Right to Foreclosure on the Acadia Property from the trustee, Defendant Nationwide Trustee Services, Inc. ("Defendant Trustee"). (ECF No. 22 ¶ 34; see ECF No. 1-4 at PageID 424.) Plaintiff had made all mortgage payments in full from November 27, 2006, until the property was foreclosed in 2011, including a payment made to Defendant on March 2, 2011. (ECF No. 22 ¶¶ 32, 34.) Defendant continued to accept mortgage payments from Plaintiff throughout the foreclosure process. (Id. ¶ 38.)

**B. Procedural Background**

Plaintiff filed a Complaint against Defendants Bank of America Home Loans, Bank of America Loans Servicing, LP, and Nationwide Trustee Services, Inc., in the Chancery Court of Shelby County, Tennessee ("State Court"), on October 19, 2011, alleging violations of state law. (See ECF No. 1-2 at PageID 10.) Defendant filed a Motion to Dismiss in State Court on December 7, 2011. (See id. at PageID 25.) On April 2, 2012, Plaintiff filed an Amended Complaint (see ECF No. 1-3 at

4

PageID 303), and on April 17, 2012, Plaintiff filed a Revised Amended Complaint (see ECF No. 1-4 at PageID 385), which included a federal-law claim against Defendants (see id. at PageID 392-94, ¶ 33-35, 41, 42, 44).

On May 2, 2012, Defendant removed the instant action to the District Court for the Western District of Tennessee based on Plaintiff's federal-law claim, pursuant to 28 U.S.C. § 1331 and § 1441(a).  (See ECF No. 1 at ¶¶ 10-13.)  On May 9, 2012, Bank of America filed a Motion to Dismiss for failure to state a claim upon which relief can be granted.  (ECF No. 4.)  On December 5, 2012, with leave of Court (see ECF No. 21), Plaintiff filed her Second Amended Complaint[4] (ECF No. 22).  The Court then denied as moot Bank of America's Motion to Dismiss on December 7, 2012.  (ECF No. 23.)

On December 19, 2012, Bank of America filed the Motion to Dismiss presently before the Court.  (ECF No. 24.)  The deadline for Plaintiff to file a response passed without Plaintiff filing a response.  (See ECF No. 25.)  On January 28, 2013, the Court ordered Plaintiff to show cause why Bank of America's Motion to Dismiss should not be granted.  (Id.)  Plaintiff filed a Response to the Court's Order to Show Cause on February 13,

---

[4] An amended complaint supersedes the previously submitted complaint.  See Glass v. The Kellogg Co., 252 F.R.D. 367 (W.D. Mich. 2008); see also B & H Med., LLC v. ABP Admin., Inc., 526 F.3d 257, 267 n.8 (6th Cir. 2008). Plaintiff does not assert any federal claims in her Second Amended Complaint. Therefore, those claims have been abandoned.  The Court, however, retains jurisdiction over this case.  See Packard v. Farmers Ins. Co. of Columbus Inc., 423 F. App'x 580, 583-84 (6th Cir. 2011).

2013, stating that counsel for Bank of America had agreed to extend the time for Plaintiff to respond for a period of thirty days, and containing assertions in opposition to Bank of America's Motion to Dismiss. (ECF No. 26.) The Plaintiff did not file another response to Bank of America's Motion to Dismiss.

## II. STANDARD OF REVIEW

A federal court sitting in diversity applies "state substantive law and federal procedural law." Degussa Admixtures, Inc. v. Burnett, 277 F. App'x 530, 532 (6th Cir. 2008) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)). Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss the plaintiff's complaint for "failure to state a claim upon which relief can be granted." Federal Rule of Civil Procedure Rule 8(a) states that a pleading, in order to state a claim for relief, must contain "a short and plain statement of the claims showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Ashcroft v. Iqbal, 556 U.S. 662 (2009), and Bell Atlantic Corp. v. Twombly, 440 U.S. 544 (2007), a "civil complaint only survives a motion to dismiss if it 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Courie v. Alcoa Wheel & Forged Prods., 577 F.3d 625, 629-30 (6th Cir. 2009) (alteration in original) (quoting Iqbal, 556 U.S. at 678).

The court "may not dismiss a complaint for failure to state a claim based on disbelief of the complaint's factual allegations." Allstate Ins. Co. v. LG&E Energy, LLC, 201 F. App'x 311, 315 (6th Cir. 2006). The court must instead "construe the complaint in the light most favorable to the plaintiff, accept all its allegations as true, and draw all reasonable inferences in favor of the plaintiff." In re Travel Agent Comm'n Antitrust Litig., 583 F.3d 896, 902-03 (6th Cir. 2009) (citation omitted) (internal quotation marks omitted). The court, however, "need not accept as true legal conclusions or unwarranted factual inferences and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." Id. at 903 (citations omitted) (internal quotation marks omitted).

In considering a motion to dismiss pursuant to Rule 12(b)(6), "a court may consider only matters properly a part of the complaint or pleadings." Armengau v. Cline, 7 Fed. App'x 336, 343 (6th Cir. 2001). The Sixth Circuit takes a "liberal view of what matters fall within the pleadings." Id. at 344. "[M]atters of public record, orders, items appearing in the record of the case, . . . exhibits attached to the complaint . . . [and] documents that a defendant attaches to a motion to dismiss" may also be considered "if referred to in the plaintiff's complaint and [] central to her claim." Gardner v. United States, 443 F. App'x 70, 73 (6th Cir. 2011) (quoting

7

Amini v. Oberlin Coll., 259 F.3d 493, 502 (6th Cir. 2001)) (internal quotation marks omitted).

### III. ANALYSIS

Defendant asserts that Plaintiff failed to state a claim in her Second Amended Complaint upon which relief can be granted pursuant to Federal Rules of Civil Procedure 8(a) and 12(b)(6). (See ECF No. 24 at 1.)  Plaintiff raises the following claims in her Second Amended Complaint:  (1) Defendant breached the Deed of Trust (ECF No. 22 ¶¶ 42-49); (2) Defendant induced Plaintiff to breach the Deed of Trust in violation of Tennessee Code Annotated § 47-5-109 (id. ¶¶ 50-58); (3) Defendant wrongfully foreclosed on Plaintiff's property (id. ¶¶ 39-41); and (4) the Trustee's sale of the Acadia Property should be set aside (id. ¶¶ 59-64).  Plaintiff's claims are addressed in turn.

**A. Breach of Contract**

In order to establish a breach-of-contract claim under Tennessee law, a plaintiff must prove "(1) the existence of a contract, (2) breach of the contract, and (3) damages [that] flow from the breach." Hinton v. Wachovia Bank of Del. Nat. Ass'n, 189 F. App'x 394, 398 (6th Cir. 2006) (alteration in original) (quoting Life Care Ctrs. of Am., Inc. v. Charles Town Assocs. Ltd., 79 F.3d 496, 514 (6th Cir. 1996)) (internal quotation marks omitted).

Defendant does not dispute the existence of a valid contract but argues that Plaintiff has failed to properly plead

8

that Defendant breached that contract and that Defendant's alleged breach caused Plaintiff's damages. (See ECF No. 24-1 at 8.) The sufficiency of Plaintiff's pleadings related to the alleged breach of the Deed of Trust, and damages flowing from that breach, are addressed in turn.

**1. Breach of the Deed of Trust**

Defendant asserts that under the Deed of Trust, it had the right to "revoke the waiver as to any or all Escrow Items at any time" with or without a reason. (Id. at 9 (quoting Deed of Trust, ECF No. 24-3, at 4) (internal quotation marks omitted).) Defendant admits that Section 3 of the Deed of Trust requires Defendant to provide written notice pursuant to Section 15 before revocation of waiver of escrow and establishment of an escrow account. (Id.) Defendant, however, asserts that it was not required to give Plaintiff notice pursuant to Sections 3 and 15 because Plaintiff "consented to an escrow account being established, thus waiving her right to notice." (Id. at 7.)

"Waiver is an affirmative defense." Madden Phillips Constr., Inc. v. GGAT Dev. Corp., 315 S.W.3d 800, 813 (Tenn. Ct. App. 2009) (citing Tenn. R. Civ. P. 8.03). A defendant asserting an affirmative defense as a bar to relief on a claim asserted by a plaintiff can only succeed where the facts "conclusively establish [the] affirmative defense as a matter of law." Hensley Mfg., Inc. v. ProPride, Inc., 579 F.3d 603, 613 (6th Cir. 2009). Under those circumstances, "there is no reason

9

[for a court] not to grant a motion to dismiss." Id.; see Reid v. Baker, No. 11-5473, 2012 WL 3893122, at *4 (6th Cir. Sept. 7, 2012); see also Jackson v. Smith, 387 S.W.3d 486, 491-92 (Tenn. 2012).

"In general, the doctrine of waiver is an excuse for 'nonperformance of contractual duties or conditions.'" GuestHouse Int'l, LLC v. Shoney's N. Am. Corp., 330 S.W.3d 166, 201 (Tenn. Ct. App. 2010) (quoting 13 Richard A. Lord, Williston on Contracts § 39:15 (4th ed. 2009)) (internal quotation marks omitted). The doctrine of waiver "applies primarily to conditions which may be thought of as procedural or technical." Id. (quoting Restatement (Second) of Contracts § 84 cmt. d (1981)). Waiver by a party "may be proven by express declaration . . . or by a course of acts and conduct." Gaston v. Tenn. Farmers Mut. Ins. Co., 120 S.W.3d 815, 819 (Tenn. 2003) (internal quotation marks omitted).

In this case, Defendant asserts that Plaintiff's conduct manifested consent to the creation of the escrow account, which amounted to a waiver of her right to written notice of the creation of an escrow account. (Id. at 9-10.) In support of this assertion, Defendant points to the following facts contained in Plaintiff's Second Amended Complaint: Plaintiff enlisted the help of NACA, which requested an escrow account be created for Plaintiff consistent with its guidelines (see ECF No. 22 ¶ 22); Plaintiff acknowledges that she was penalized for

10

failing to pay the requisite fees into the escrow account (see id. ¶ 25); and Plaintiff's 2010 property-tax payment was returned because the property taxes had already been satisfied (see id. ¶ 30).  (ECF No. 24-1 at 8.)

Assuming for the purposes of this Order that Defendant's premise that Plaintiff's consent to the creation of an escrow account pursuant to NACA's guidelines is equivalent to waiver of her right to notice of the creation of that escrow account under the Deed of Trust, the Court finds that the facts pointed to by Defendant do not conclusively establish that Plaintiff consented to the creation of the escrow account.

First, while Plaintiff states in her Second Amended Complaint that she sought assistance from NACA in pursuing a loan modification with Bank of America, Plaintiff does not state that she authorized, or specifically requested, that NACA have Bank of America set up an escrow account on her behalf.  (See ECF No. 22.)  Further, Plaintiff asserts that Bank of that Bank of America never responded to NACA's inquiries; that failure to respond could have led her reasonably to believe that the account was not going to be established.  (See ECF No. 22 ¶¶ 20-23.)  Accepting Plaintiff's allegations as true, and construing the facts in the light most favorable to Plaintiff, Defendant has not "conclusively established" that Plaintiff consented to the creation of an escrow account, thus waiving her right to notice of the creation of that account.

11

Additionally, the other facts to which Defendant points do not conclusively establish "consent" to the creation of an escrow account. The fact that Plaintiff acknowledges that she was later penalized for failing to pay the appropriate fees into the escrow account does not lead to the conclusion that she consented to the creation of the account. Instead, it suggests that, at some point, Plaintiff became aware of the existence of the account. There is nothing in Plaintiff's Second Amended Complaint that states when Plaintiff became aware of the penalties. Similarly, the fact that Plaintiff's property-tax payment was returned does not conclusively establish that Plaintiff consented to the creation of the escrow account, particularly in light of the fact that the return of the property tax payment occurred after the creation of the escrow account and after the acceleration of the loan.

Because Defendant has not established that Plaintiff waived her right to notice by consenting to the creation of an escrow account, and because Plaintiff asserts in her Second Amended Complaint that she did not receive notice, the Court finds that Plaintiff has sufficiently pled a breach of the Deed of Trust instrument.

**2. Damages**

Defendant asserts that Plaintiff has not properly alleged damages as a result of the alleged breach of the Deed of Trust. (See ECF No. 24-1 at 8, 11.) Defendant's assertion, however,

12

depends on its argument that Plaintiff waived her right to notice under the Deed of Trust. Plaintiff asserts that Defendant's breach of the Deed of Trust's notice provision was the proximate cause of the foreclosure of the Acadia Property. (ECF No. 22 ¶¶ 46-49.)

Having already determined that Plaintiff has sufficiently pled a breach of the Deed of Trust, the Court finds that Plaintiff has put forth sufficient facts to state a claim for damages resulting from the alleged breach of the Deed of Trust.

In summary, Plaintiff has put forth sufficient facts to raise a breach-of-contract claim under Tennessee law. Defendant's Motion to Dismiss is DENIED as to this claim.

**B. Wrongful Foreclosure**

Defendant asserts that Plaintiff has not alleged facts sufficient to raise a plausible wrongful-foreclosure claim. (See ECF No. 24-1 at 8.) While there are no specific elements for wrongful foreclosure, Tennessee courts generally examine whether contractual or statutory requirements were met in the foreclosure of the property in question. See Hutchens v. Bank of Am. N.A., No. 3:11-CV-624, 2012 WL 1618316, at *9-10 (E.D. Tenn. May 9, 2012); Lee v. EquiFirst Corp., No. 3:10-cv-809, 2010 WL 4320714, at *10 (M.D. Tenn. Oct. 26, 2010).

Plaintiff does not allege that Defendant violated any statutory requirements related to foreclosure of the Acadia Property. (See ECF No. 22.) Plaintiff does, however, assert

13

that the foreclosure was based on Defendant's wrongful failure to provide notice that it had created an escrow account. (Id. ¶ 40.) Defendant's wrongful act then led to the acceleration and eventual foreclosure of the Acadia Property. (Id.) Having already determined that Plaintiff's breach-of-contract claim has been sufficiently pled, the Court finds that Plaintiff has sufficiently pled a claim for wrongful foreclosure.

Defendant's Motion to Dismiss is DENIED as to Plaintiff's wrongful-foreclosure claim.

**C. Inducing a Breach of Contract**

Defendant asserts that Plaintiff cannot state a claim against Defendant upon which relief can be granted for inducing a breach of contract. In support of this assertion, Defendant argues that this cause of action applies only to third parties, and does not apply to parties to the contract. (ECF No. 24-1 at 12-13.)

Under Tennessee law, "a party to a contract cannot be liable for tortious interference with that contract." Cambio Health Solutions, LLC v. Reardon, 213 S.W.3d 785, 789 (Tenn. 2006); see also Purisch v. Tenn. Technological Univ., 76 F.3d 1414, 1420 (6th Cir. 1996) ("A party to a contract cannot be held liable for procuring the breach of that contract.").

Plaintiff asserts that Defendant induced Plaintiff to breach the contract, in violation of Tennessee Code Annotated Section 47-50-109. (See ECF No. 22 ¶¶ 50-58.) Defendant,

14

however, is a party to the contract that Plaintiff alleges Defendant induced her to breach. As a result, Plaintiff cannot hold Defendant liable for inducing a breach of the contract. The Court finds that Plaintiff has failed to state a claim upon which relief can be granted as a matter of law.

Defendant's Motion to Dismiss is GRANTED as to Plaintiff's claim for inducing a breach of contract.

**D. Setting Aside Trustee Sale**

Defendant asserts the foreclosure was completed in compliance with the Deed of Trust. (See ECF No. 24-1 at 13.) As a result, there was no irregularity, misconduct, fraud, or unfairness to Plaintiff that would allow a court to set aside the foreclosure sale. (Id. at 14.)

In Tennessee, foreclosure sales are not set aside lightly. Young v. Bank One, N.A., No. M2003-01359-COA-R3-CV, 2004 WL 2098284, *1 (Tenn Ct. App. Sept. 20, 2004). "The same reasons which allow a court to enjoin the enforcement of a mortgage should also be applicable in a situation where the court is asked to set aside a foreclosure." Held v. Tenn. Title Co., 448 S.W.2d 413, 415 (Tenn. 1969). These grounds include

> (1) when [the mortgage] was obtained on fraud; (2) when there has been a total failure of consideration; (3) when the complainant is not bound, by reason of some accident, or mistake, in its execution, against which Equity will relieve; (4) when the debt secured by the instrument has been fully paid; or (5) is barred by the statute of limitations.

15

Id. (citation omitted) (internal quotation marks omitted). If one of these grounds is not present, there must be "fraud[] or unfairness on the part of the trustee or the mortgagee *that caused or contributed to an inadequate price*, for a court of equity to set aside the sale." Holt v. Citizens Cent. Bank, 688 S.W.2d 414, 416 (Tenn. 1984) (emphasis added).

Plaintiff asserts that she was not behind on her mortgage, property-taxes, or homeowner-insurance payments and that Defendant was still accepting payments from Plaintiff. (See ECF No. 22 ¶¶ 60, 62.) Plaintiff further asserts that the Defendant Trustee knew, or had reason to know, that Bank of America continued to accept payments from Plaintiff and that Plaintiff should not have been subject to foreclosure. (Id. ¶¶ 61-62.) Plaintiff states that, as a result, Plaintiff's foreclosure "was done with irregularity and unfairness on the part of the trustee and the mortgagee." (Id. ¶ 63.)

In Paragraph 63, Plaintiff recites the language contained in Holt for setting aside a foreclosure sale. (Id.) Plaintiff, however, has not put forth any facts suggesting that the price received for the Acadia Property was in any way inadequate. As a result, Plaintiff has not raised a plausible ground to set aside the foreclosure sale under Holt.

Plaintiff has, nevertheless, set forth facts sufficient to raise a claim for wrongful foreclosure, see supra pp. 13-14, and incorporates this claim into her request to set aside the

foreclosure sale.  (See ECF No. 22 ¶ 59.)  It appears to the Court that, under Held, wrongful foreclosure constitutes a ground to set aside a foreclosure sale.  See Lebs P'ship, Ltd. V. Nw. Mut. Life Ins. Co., No. 965, 1992 WL 25001, at *4 (Tenn. Ct. App. Feb. 14, 1992) (citing Held, 448 S.W.2d at 415).  The Court finds that, because Plaintiff has sufficiently pled a claim for wrongful foreclosure, Plaintiff has further raised a plausible ground to set aside the foreclosure sale.

Defendant's Motion to Dismiss is DENIED as to Plaintiff's request for the Court to set aside the foreclosure sale.

### IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is GRANTED IN PART as to Plaintiff's claim for inducing a breach of contract; and DENIED IN PART as to Plaintiff's other claims.

**SO ORDERED** this 9th day of April, 2013.

                                        s/ Jon P. McCalla
                                        JON P. McCALLA
                                        CHIEF U.S. DISTRICT JUDGE